WILLIAM H. DRYDEN *vs.* SUSAN B. HANWAY and MARY
          HANWAY, an infant, by Guardian.

*Resulting Trusts—An Absolute Deed treated as a Mortgage.*

Parol proof of facts and circumstances may be admitted in equity to establish resulting trusts.

D purchased a house and lot in his own name, but not having the money to pay for it, H, who was his brother-in-law, and disposed to aid him, advanced the money, and for his security was reported to the Orphans' Court, by the executors who made the sale, as the purchaser, and took the conveyance in his own name, upon the payment of the purchase-money. Upon a bill filed by D to have the deed to H declared to be only a security by way of mortgage, for the repayment of the loan, HELD:

That the facts established a resulting trust which a Court of Equity will recognize; and the deed to H must be treated as a mortgage between the parties; and upon the payment of the amount loaned by H to D, with the arrears of interest thereon, within a reasonable time to be prescribed by the Circuit Court, the property must be conveyed to D, discharged of the lien, by a trustee to be appointed by the Court for that purpose.

APPEAL from the Circuit Court of Baltimore City.

The bill of complaint filed in this case by the appellant, on the 8th of April, 1867, against the appellees, alleged that on the 7th July, 1862, the executors of Thomas Street, by virtue of a power contained in the will of their testator, offered at public sale, at the Exchange Salesroom, in the city of Baltimore, a certain house and lot on East Fayette street, in the occupancy of the complainant, at the date of filing the bill; that on the day said property was advertised to be sold, the complainant, and one Franklin Hanway (since deceased), the brother of the complainant's wife, attended said sale; that the complainant bid in the property for the price of $2,400, and signed the memorandum of sale on the auctioneer's book, the said

Hanway having previously agreed to lend the complainant money sufficient to pay for the property, the complainant to pay interest on said loan, at the rate of six per cent. per annum, until the principal should be repaid; that in accordance with said agreement the said Hanway loaned the complainant the amount of the purchase-money; that subsequently, the executors of Thomas Street, who were his two sons, David and Charles Street, reported the sale of said property to the Orphans' Court of Baltimore City as having been made to the said Hanway, which sale was duly confirmed by the Court; and thereupon, on the 12th August, 1862, the said executors executed an absolute deed of the property to Hanway. The bill further stated that, as soon as the sale was consummated, the complainant and his family moved into the house, occupied it during the life of Hanway (which terminated in August, 1864), and had continued to occupy it up to the time of filing the bill, paying therefor at the rate of six per centum on the $2,400, to the said Hanway during his life, and the same amount to his estate since his decease. The bill alleged further that, notwithstanding the report of sale declared it to be the purchase of Hanway, and that the deed was made to him, as of an absolute purchase, yet that the true agreement between the complainant and Hanway (which agreement, it was admitted, was only by parol), was that the complainant should have the property, and a deed therefor from Hanway, whenever he, the complainant, should pay to Hanway the sum of $2,400, and all interest due thereon; which he averred his willingness and desire to do.

The bill further alleged that the executors of Thomas Street were aware of this agreement, although they reported the sale as made to Hanway, and made the deed to him; that the deed was prepared in the form above stated, at the suggestion of the complainant, and that the proper paper to accompany the absolute deed, and to operate as

a defeasance thereof on the repayment of the said loan, was omitted, as well by mistake as because of the confidence reposed by the complainant in said Hanway; that, however, it was only intended to operate as a security by way of mortgage for the repayment to Hanway, by the complainant, of the sum of $2,400, and interest thereon.

The bill also alleged that the complainant, after taking possession of the premises, treated and considered them as his own, paying the taxes and making the repairs at his own expense; and that Hanway always acknowledged this to have been the character of the complainant's possession.

The bill then prayed the Court to declare that the deed from Street's executors to Franklin Hanway was designed to operate only as a security, by way of mortgage, for the repayment of the $2,400 and interest, and that upon its repayment, with all accrued interest thereon, said property should be conveyed, *in fee simple*, to the complainant. The appellee Susan, the widow of Franklin Hanway, filed her answer, denying the allegations of the bill, in so-far-as the same set up any contract or agreement against the deed, and also relied upon the Statute of Frauds; the appellee Mary, the daughter of the said Franklin Hanway, being an infant, answered by guardian in the usual way.

A commission was thereupon issued by the complainant to take testimony to support the allegations in his bill; the character of the testimony adduced will be found sufficiently stated in the opinion of this Court.

The Circuit Court (PINKNEY, J.,) after hearing, passed an order, on the 5th of November, 1868, dismissing the bill; from this order the present appeal was taken.

The cause was argued before STEWART, MILLER, ALVEY and ROBINSON, J.

*L. L. Conrad* and *Bernard Carter*, for the appellant.

By the auctioneer's adjudication to the appellant as the highest bidder for the property at the executor's sale, and by his signing the memorandum of purchase on the auctioneer's book, he acquired a valid interest in the property, and complied with the requirements of the Statute of Frauds. This title Courts will protect and enforce. *Arden vs. Brown,* 4 *Cranch, C. C.,* 121 ; *First Baptist Church of Ithaca vs. Bigelow,* 16 *Wendell,* 28 ; *McComb vs. Wright,* 4 *Johns. Ch. R.,* 659 ; *Buckmaster vs. Harrop,* 13 *Vesey,* 456 ; *Blagden vs. Bradbear,* 12 *Ves.,* 466 ; *Singstack vs. Harding,* 4 *H. & J.,* 186 ; 3 *Phillips on Ev.,* 350 ; *Hampson vs. Edelin,* 2 *H. & J.,* 64 ; *Keys & Heron vs. Goldsborough,* 2 *H. & J.,* 369.

It is said that the agreement averred in the bill to have existed between Hanway and the appellant, to wit : that the deed should operate only as a mortgage or security, to secure Hanway the repayment of the advance or loan made by him, was a parol agreement in relation to real property, and as such within the Statute of Frauds ; and 2d, that the deed concludes the appellant, and cannot be impeached, nor can parol testimony be admitted to vary nor affect its terms, unless in cases where fraud, accident, or mistake be alleged. The answer to this is, that the bill charges that the written defeasance designed to have been executed, was *" omitted by mistake."*

That though the bill does not use the precise word "fraud," it yet charges a series of facts and conduct on the part of the defendants which constitute fraud of the gravest kind ; and where the substance is charged, the employment of technical terms is unnecessary, unless a bill in equity is required to observe the same artificial and technical nicety as a criminal indictment. To insist on what is really a mortgage, as a sale, is certainly a fraud, and when such an *attempt* is charged, *fraud* is charged. *Russell vs. Southard, et al.,* 12 *Howard,* 139.

It is manifest that no " attempt to convert that into a sale which was meant to be a security for a loan," can be

otherwise than "*fraudulent,*" and when you charge such "*attempt,*" you charge a "*fraudulent attempt*" of necessity.

But the rule in equity admitting parol testimony, has been, by the highest authority, conceived to embrace cases where the defeasance to an absolute deed is omitted "by design, or upon mutual confidence between the parties." *Russell vs. Southard, et al.,* 12 *Howard,* 139 ; *Babcock vs. Wyman,* 19 *Howard,* 289 ; *Taylor vs. Luther,* 2 *Sumner,* 228–232–3 ; *Jenkins vs. Eldredge,* 3 *Story, C. Ct.,* 293 ; *Wyman vs. Babcock,* 2 *Curt, C. Ct.,* 386, and cases cited ; *Holbrook vs. The American Ins. Co.,* 1 *Curt, C. Ct.,* 193 ; 1 *Powell on Mortgages,* 151, a (b) note.

To sustain the general doctrine that parol testimony is admissible *between the parties,* to *contradict, add to,* or vary the terms of a will, deed, or other instrument, where accident, fraud, or mistake be averred, (and both fraud and mistake have been averred by complainant, as heretofore shown,) see 4 *Kent Com.,* 143 ; *Jenkins vs. Eldredge,* 3 *Story,* 181–293 ; *Taylor vs. Luther,* 2 *Sumner,* 228 ; *Russell vs. Southard, et al.,* 12 *Howard,* 138 ; *Morris vs. Exc'r of Nixon, et al.,* 1 *Howard,* 118–127 ; *Clark vs. Henry,* 2 *Cowen,* 324–332 ; *Farrell vs. Bean,* 10 *Md.,* 217–233 ; *Hicks vs. Hicks,* 5 *G. & J.,* 75 ; *Dougherty vs. McColgan,* 6 *G. & J.,* 275 ; 1 *Greenleaf on Ev.,* sec. 296 ; 3 *Leading Cases in Equity,* 624, *et seq.,* 629–630 ; *Barreda, et al. vs. Silsbee, et al.,* 21 *Howard,* 170 ; *Boyd vs. McLean,* 1 *Johnson's Ch. Rep.,* 582 ; *Whittick vs. Kane,* 1 *Paige,* 202 ; *McBurney vs. Wellman,* 42 *Barbour,* 390 ; *Van Buren vs. Olmstead, et al.,* 5 *Paige,* 9 ; *Strong vs. Stewart,* 4 *Johns. Ch. Rep.,* 167 ; *Bentley vs. Phelps,* 2 *Woodbury & Minot's C. Ct.,* 426 ; *Sturtevant vs. Sturtevant,* 20 *N. Y.,* 39 ; *Hodges vs. The Tennessee Marine and Fire Ins. Co.,* 4 *Selden,* 416 ; 2 *Am. Leading Cases,* part 2, 435.

The object of the appellant is not to contradict or vary the terms of the deed ; not to explain any matter on its face, but to show *beyond the deed* the nature of the trans-

action.  *Bentley vs. Phelps*, 2 *Wood & Minot's C. C. Rep.*, 426 ; *Dow, et al. vs. Chamberlin, et al.*, 5 *McLean*, 282.

The rule excluding the introduction of parol testimony, to impeach, contradict, or vary written instruments, is restricted to parties to the instrument.  Strangers do not fall within the rule, and the appellant stands as a stranger. 1 *Greenl. on Evidence, sec.* 279 ; 1 *Whart.*, 303–314 ; *Overseers of Berlin vs. Overseers of Norwich*, 10 *John*, 229 ; *Whitbeck vs. Whitbeck*, 9 *Cowen*, 270 ; *Henderson vs. Mayhew*, 2 *Gill*, 393, 409 ; *Alderson vs. Ames & Day*, 6 *Md.*, 52.

The appellant entered upon and occupied the premises in question immediately after the execution of the deed to Hanway, and has continued to occupy them ever since, made repairs, paid the taxes, &c., and acted in all respects as owner.  This actual possession, and by consent of Hanway, can be regarded only in the light of part performance by Hanway of his agreement with the appellant, and withdraws the case from the operation of the Statute of Frauds.  *Story's Eq. Juris.*, secs. 761, 762, 763 ; *Adams' Equity*, 85, 86, *and notes.*

The Statute of Frauds only requires the slightest written evidence of a declaration of trust in order to let in proof of the *real transaction.*  *Dorsey vs. Clarke*, 4 *H. & J.*, 555, (per Kilty) ; *Maccubin vs. Cromwell*, 7 *G. & J.*, 162 ; *Cripps vs. Jee*, 4 *Brown's Ch. Rep.*, 472 ; *Lenar vs. Whitney*, 4 *Russel*, 427.

The tenor of the receipts given by Hanway, and after his death by his representatives, and also the memorandum of sale on the auctioneer's book, constitute a recognition in writing of the appellant's title, and of the parol agreement relative thereto, sufficient to extract the case from the reach of the Statute of Frauds.

The use of the term *interest* in those receipts is pregnant with significance, and the amounts paid as *interest* correspond exactly with that term.

It is urged, however, that the term *rent* also employed in

said receipts, negatives any conclusion to be drawn from the term *interest.* Standing alone, those two contradictory terms might at first seem to evenly balance each other.

These receipts, however, read in the light of all the oral evidence, which is clearly admissible to explain them, show clearly that the money was paid as interest.

Who can doubt, after reading the evidence, that the amounts paid quarterly by the appellant were paid as *interest,* and not as *rent?* *Dorsey vs. Clarke,* 4 *H. & J.,* 555 (per Kilty); *Maccubin vs. Cromwell,* 7 *G. & J.,* 162; *Cripps vs. Jee,* 4 *Brown's Ch.,* 472; *Lenar vs. Whitney,* 4 *Russell,* 427.

*H. Clay Dallam,* for the appellees.

Admitting the agreement, as set up in the bill, it is wholly inoperative. It is not competent for the appellant, by parol proof, to invoke the aid of a Court of Equity in the manner sought. *McElderry vs. Shipley,* 2 *Md.,* 35. Even independent of the Statute of Frauds, parol evidence is inadmissible to contradict, add to, or vary the terms of a written agreement; and there must be an allegation in the bill, and proof thereof, of fraud, mistake, or surprise, before a Court of Chancery will in any case rectify an agreement. *Wesley vs. Thomas,* 6 *H. & J.,* 24, 29; *Watkins vs. Stockett,* 6 *H. & J.,* 444; *Bend vs. Susq. Bridge Co.,* 6 *H. & J.,* 128; *Harwood vs. Jones,* 10 *G. & J.,* 404; *Cecil Bank vs. Snively,* 23 *Md.,* 261; *Dorsey vs. Clarke,* 4 *H. & J.,* 556; *Bartlett vs. Pickersgill,* 4 *East,* 577; 2 *Story's Eq. Juris., sec.* 1201; *Jones vs. Slubey,* 5 *H. & J.,* 372.

If the answer denies the existence of a parol contract, and insists upon the benefit of the Statute, the case cannot be made out by parol evidence, and the bar is complete. 2 *Story's Eq. Juris., sec.* 758. There is no allegation in the bill of either fraud or mistake.

If Franklin Hanway, who paid the purchase-money for the property, had survived, and the appellant had taken the deed to the property in his own name, Hanway could

have enforced his resulting trust in a Court of Equity, and had the property reconveyed to him.

Lord Thurlow, in *Irnham vs. Child*, 1 *Bro. Ch. Ca.*, 92, said "that the proof of a mistake should be established as much to the satisfaction of the Court as if it were admitted, and that the difficulty of doing this is so great that there is no instance of its prevailing against a party insisting that there is no mistake."

Nor is there anything presented in the complainant's case that would induce this Court to act on the ground of a part performance. It is true that the complainant took possession of the premises referred to, but the proof shows that he occupied them in the relation of tenant. In the ordinary case, even between a vendor and vendee, where the aid of a Court of Chancery is sought to compel the specific performance of agreements of sale, on the ground of part performance, the Courts of Maryland have said, that the tendency which at one time existed, to relax the Statute of Frauds, should be opposed, and that a complainant, who seeks to take his case out of its operation, on the ground of part performance of the contract, must make out, *by clear and satisfactory proof*, the existence of the identical contract charged in the bill; and it is not enough that the act relied on is evidence of some agreement, but it must be unequivocal and satisfactory evidence of the contract charged in the bill. *Beard vs. Linthicum*, 1 *Md. Ch. Dec.*, 345, 350; *Small vs. Owings*, 1 *Md.*, 363; 2 *Story's Eq.*, sec. 762, 763, 767; *Smith vs. Crandall*, 20 *Md.*, 500; 3 *Md.*, 490; 4 *Md.*, 459, 462; 20 *Md.*, 186.

And in every case, the party asking the enforcement of the contract must offer the fullest proof of its existence, and the acts of part performance relied on must be referrible exclusively to the contract set up in the bill. See the Maryland cases collected in *Stockett, Merrick and Miller's Dig.*, p. 331; *Fry on Specific Perf'ce*, 251, 253, 254, 261, 262; 6 *Paige*, 289, 293; *Frame vs. Dawson*, 14 *Ves.*, 386; *Whaley vs. Bagnal*, 6 *Brown's Rep.*, 45.

As to the doctrine, generally, of specific performance, this Court has declared, that in every case the specific execution of a contract in equity is not a matter of absolute right, *ex debito justitiæ*, but of sound discretion in the Court, and unless it is satisfied the application is fair, just, and reasonable in every respect, and the contract *bona fide*, mutual and certain in all its parts, it will abstain from interfering; and it is enough to doubt, upon any one of these points to refuse relief. 4 *Md. Ch. Dec.*, 459 ; 5 *Md.*, 18; 4 *Md. Ch. Dec.*, 475 ; 3 *Md.*, 480; 10 *Md.*, 282 ; 11 *Md.*, 285 ; *Philpott vs. Elliott*, 4 *Md. Ch. Dec.*, 273 ; *Waters vs. Howard*, 1 *Md. Ch. Dec.*, 112 ; *Waters vs. Howard*, 8 *Gill*, 262 ; *Duvall vs. Myers*, 2 *Md. Ch. Dec.*, 401 ; *Geiger vs. Green*, 4 *Gill*, 472 ; *Tyson vs. Watts*, 7 *Gill*, 124 ; *Gelston vs. Sigmund*, 27 *Md.*, 334, 343 ; *Lindsay vs. Lynch*, 2 *Sch. & Lef.*, 1.

STEWART, J., delivered the opinion of the Court.

The only material question for us to decide, from the circumstances of this case is, as to the existence of any such trust, or confidence between the appellant and Franklin Hanway, in regard to the house and lot in question, as a Court of Equity can consider as implied by operation of law, and not in conflict with the Statute of Frauds, the plea of which has been interposed by the appellee.

Resulting trusts are saved and excepted by the 8th section of that Statute; and that parol proof of facts and circumstances may be admitted in equity to establish such trusts, is fully settled.

The answer to the main question involved depends upon the force, effect, and sufficiency of the proof.

If the money advanced by Hanway was on his own account, as a *bona fide* purchaser of the property, the deed, which was taken in his own name, must have correspondent construction, and will vest the title to the property in him, according to the terms expressed therein, and

there is no ground for any implied, constructive, or resulting trust.

On the contrary, if Hanway did not in truth become the purchaser of the property, and did not mean to buy the same, but merely to advance or loan the money to Dryden, the appellant, the purchase in equity can only be considered as made by Dryden, and the deed, although taken in Hanway's name, constitutes him but a trustee for Dryden, the *bona fide* purchaser, and is only a security for the payment of the loan. *Boyd vs. McLean,* 1 *Johnson's Ch. Cases,* 590; *McBinney vs. Wildar,* 42 *Barbour,* 402.

The proof in this case very clearly shows that Dryden, the appellant, was the purchaser, in his own name, of the property in question, at the sale made by the executors, but not having the money to pay for the same, Franklin Hanway, who was his brother-in-law, and disposed to aid him, agreed to advance the money for him, and did loan to him the money, and for his security was reported to the Orphans' Court as the purchaser, and took the conveyance in his own name, upon the payment of the purchase-money. Hanway thus held the legal title, subject to the trust reposed in him.

The manner of holding and occupying the property afterwards is in accordance with this understanding, and is confirmatory of the theory maintained by Dryden, the appellant.

The interest on the debt as such was regularly paid and received, as the receipts filed show, and the taxes were paid, and repairs and improvements made upon the property, by Dryden, as the beneficial proprietor thereof.

Under such circumstances, with abundant evidence of the nature of the transaction, the money loaned by Hanway to Dryden, with the deed conveying to Hanway the legal title to the property, to secure its payment, must be treated as a mortgage between the parties.

A resulting trust is fully established, which a Court of

Equity will recognize; upon the payment of the amount loaned by Hanway to Dryden, with the arrears of interest thereon, within such reasonable time as may be prescribed by the Court below, the property must be discharged from the lien of the same, and be conveyed to the appellant, Dryden, by a trustee to be appointed by the Court for that purpose.

The decree below will be reversed, and the cause remanded for further proceedings, in conformity with this view.

*Decree reversed, and cause remanded.*

(Decided 30th June, 1869.)