GEORGE P. McRAE AND MARGARET J. McRAE *vs.* HENRIETTA McRAE, Executrix and Devisee.

*Resulting trust—Insufficiency of Evidence—Contract to Sell an Equitable estate—Right of Wife to Dower.*

A bill was filed by a widow, being executrix and sole devisee of her husband, to recover certain property. She charged that her husband had purchased the property at trustees' sale, and had paid for it with money loaned to him by his brother, and that the title was conveyed to his brother merely as security for the payment of the loan. There was evidence of a verbal agreement between the brother and the complainant's husband that the latter should have the property whenever he paid the purchase money. It was further shown that this verbal agreement was embodied in a lease, by which the brother leased the property to the complainant's husband for a term of years, with an option on the part of the latter to buy it at a designated price, and within a given time. There was evidence also of repeated and unqualified declarations made by the complainant's husband directly after the sale, to a number of persons, among whom were some of his intimate friends, that the property was bought by his brother, and not by himself, he assigning at the same time the reasons why he did not buy it. HELD:

That the evidence was insufficient to establish a resulting trust in favor of the complainant's husband.

Where a person having an equitable estate in land contracts to sell such equitable estate, and he subsequently acquires the legal title, he will be decreed to convey such title to the purchaser, since he will be considered as holding such title as trustee for such purchaser.

A contract on the part of a married man to sell his equitable estate, such contract being founded on a valuable consideration, will be regarded in equity as executed, and as operating to transfer the estate from him to the purchaser, and will defeat the right of his wife to dower in such equitable estate.

APPEAL from the Circuit Court of Baltimore City.

The appeal in this case was taken from a decree of the Court below (WICKES, J.,) adjudging that the plaintiff was entitled to a deed in fee simple of the property in the proceedings mentioned, and of all the right, title, interest and estate, legal and equitable of the defendants and of each of them in and to said property, and freed, clear and discharged of all claims of the defendants or either of them therein or thereto; and appointing a trustee to execute and deliver to the plaintiff said deed. The case is stated in the opinion of this Court.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, ROBERTS, MCSHERRY, and BRISCOE, J.

*S. Gross Horwitz,* and *Theophilus B. Horwitz,* for the appellants.

The trustees' report of the sale of the property in question to the appellant, George P. McRae, the lease thereof from him to Charles McRae, the deed of the same from the trustees to said George P. McRae, and the testimony in this case, establish, beyond a doubt, that George P. McRae, purchased and paid for, and is the absolute and *unconditional* owner of, the said property, and was so regarded and dealt with and acknowledged to be such by Charles McRae.

The allegations in the amended bill, that George P. McRae never had any title to said property, except as security for the loan of ten thousand dollars to Charles McRae, at a grossly usurious rate of interest, and that the "whole transaction is simply a mortgage and intended by and between the parties to be such," are groundless, and wholly unsupported by the facts in this case. The $960 was paid by Charles McRae as rent, and not as interest, and received by George P. McRae only as rent.

The lease shows that in consideration of Charles McRae's paying to George P. McRae the said annual rent of nine hundred and sixty dollars, George P. McRae covenanted to pay "all taxes of all kind on said lot and premises, including water rent and expenses of repairs on said property," and he actually so expended, including the insurance of said property, more than one thousand dollars, for nine hundred and fifteen dollars of which he produced receipts. And the lease also provides, that in case of default in the payment of said rent, "said lease shall then become null and void;" and "in case of fire preventing the occupancy of said premises" by said Charles McRae, the "rent shall cease and be abated until the premises be restored for occupancy." Not only is George P. McRae bound to rebuild the property if destroyed by fire, which it is pretended by the appellee, belonged to said Charles McRae, but he was to pay no rent to said George P. McRae, until it was restored by said George, for occupancy. Can it be seriously contended that such a contract is "simply a mortgage and intended by and between the parties to be such?" And the testimony of the appellee's chief witness, Merryman, (the lawyer who prepared the deed and lease,) proves that "the deed had no other meaning than being an absolute deed."

The learned Judge below, in his opinion, quotes at length from *Montague vs. Sewell*, 57 *Md.*, 414, and cites *Andrews vs. Poe*, 30 *Md.*, 486, and other cases, to show that Courts will examine into the real nature of the transaction, to ascertain the original intention of the parties. Those cases, it is respectfully submitted, as shown by the testimony of Merryman and of the appellants' witnesses, can have no application whatever to this case.

In the argument of this case below, the counsel for the appellee relied upon the case of *Dryden vs. Hanway*,

31 *Md.*, 254, to sustain their pretension, that the deed was made by the trustees as a mortgage; and Judge Wickes cites it in his opinion as covering that point. The facts, in that case and in this, are entirely different. Hanway "*loaned*" Dryden "the amount of the purchase money" of a lot of ground and improvements at six per cent. per annum. The deed for the property was taken in the name of Hanway, for his security, and Dryden took possession of the property and he treated and considered it as his own, paying Hanway the interest on the loan regularly, and also "paying the taxes and making the repairs at his own expense," and Hanway always acknowledged that Dryden was the owner of the property. And the Court of Appeals rests its decision upon the facts above named. (31 *Md.*, 263.) In this case, Charles McRae, who, it is now pretended, was the owner of the property in question, during all the time he occupied the same as the tenant of George P. McRae, for nearly four years, never claimed to be the owner thereof or paid one cent for taxes, water rent, repairs, or insurance, nor has the appellee so expended one cent since the death of her husband, Charles McRae.

The sale of property under a decree of a Court of equity is made by the Court through the trustee named therein, who is the mere agent of the Court, and the purchaser has only an *inchoate* or incipient title to the property until the sale is finally ratified by the Court, and then the ratification retroacts and "he is regarded by relation as the owner from the period of sale."

George P. McRae had a good title to the property from the day of sale, 13th of March, 1888, but Charles McRae never had any title thereto, if even the property were knocked down to him by the auctioneer, which the testimony proves is not the fact. *Wagner and Marshall vs. Cohen,* 6 *Gill,* 102, 103.

A Court of equity has no power in Maryland, to compel a wife to unite with her husband in a deed of fee simple property, which, without her consent, he has contracted to sell at a certain price.

Charles McRae chose to take the risk of the wife of George P. McRae not joining in the deed of said property, if Charles elected to purchase it within the time named in said lease. *Clark vs. Seirer*, 7 *Watts*, 112; *Burk vs. Serrill*, 80 *Pa. St.*, 420; *Peeler vs. Levy*, 26 *N. J. Eq.*, 332.

*Frank Gosnell*, (with whom was *Thomas M. Lanahan*, on the brief,) for the appellee.

The facts conclusively show that the deed from the trustees to George P. McRae, and the lease from him to Charles McRae, were executed as a mere security or mortgage to George for the purchase money of the property, advanced by him on account of Charles, and that the title was only to remain in George until the $10,000 was repaid to him. Complainant's Exhibit A was not simply a lease with a clause of redemption; the transaction was no less than a mortgage, and that at a usurious rate of interest, and being such, no matter what the form of the instruments, this Court will look at the real facts in the case, and if it be shown that the transaction was intended merely as a security, these instruments will be stricken down, and the property be declared to belong to the true owner, upon payment of the amount due, with legal interest down to the time of tender.

As was said by the Court of Appeals in *Montaque vs. Sewell*, 57 *Md.*, 407, at page 414, "Courts, therefore, have recognized the necessity of disregarding the form, and examining into the real nature of the transaction, and if that be in fact a loan, no shift or device will protect it. And as in such cases the original intention of

the parties can seldom be arrived at except by resort to matters *dehors* the particular instruments of writing executed by them, extrinsic evidence must be received to show the real nature and intention of the transaction. *Tyson vs. Rickard*, 3 *H. & G.*, 109, 114; *Andrews vs. Poe*, 30 *Md.*, 486." To the same effect are *Gaither vs. Clarke*, 67 *Md.*, 18; and *Neale, et al. vs. Rathall, et al.*, 70 *Md.*, 592.

A case most strikingly analogous to the one at bar is *Dryden vs. Hanway*, 31 *Md.*, 254. The facts are almost identical—Susan Hanway, the widow of the appellee, denying the right of Dryden to have the absolute deed declared a mortgage. The Court say, on page 263: "On the contrary, if Hanway did not in truth become the purchaser of the property, and did not mean to buy the same, but merely to advance or loan the money to Dryden, the appellant, the purchase, in equity, can only be considered as made by Dryden, and the deed, although taken in Hanway's name, constitutes him but a trustee for Dryden, the *bona fide* purchaser, and is only a security for the payment of the loan." *Boyd vs. McLean*, 1 *John. Ch. Cases*, 590; *McBinney vs. Wildar*, 42 *Barbour*, 402.

"The proof in this case very clearly shows that Dryden, the appellant, was the purchaser in his own name of the property in question, at the sale by the executors, but not having the money to pay for the same, Franklin Hanway, who was his brother-in-law, and disposed to aid him, agreed to advance the money for him, and did loan him the money, and for his security was reported to the Orphans' Court as the purchaser, and took the conveyance in his own name, upon the payment of the purchase money. Hanway thus held the legal title, subject to the trust reposed in him.

"The manner of holding and occupying the property afterwards is in accordance with this understanding, and is confirmatory of the theory maintained by Dryden, the

appellant.'' It appears by the original record in 31 *Md.*, 254, that the receipts, on their face, show that they were for rent as well as for interest.

Upon the foregoing authorities the appellee is entitled to an account in which she should · be charged with the $10,000 advanced by the appellant, George P. McRae, and she should also be charged with taxes, water rent, insurance and repairs upon the property, from the 1st of April, 1888, down to the date of said tender, and should be credited with the payments of $80 monthly, since the 1st of April, 1888, (interest on debits and credits to be duly allowed,) · and upon payment of the balance so ascertained to be due, is entitled to a deed in fee of said property executed by the appellants, or by a trustee to be appointed for that purpose.

Sec. 5 of Art. 45 of the Code provides that "A widow shall be entitled to dower in lands held by equitable title in the husband, but such right of dower shall not operate to the prejudice of any claim for the purchase money of such lands, or other lien on the same." It is "well settled that the wife's right to dower in the *equitable* estate of her husband exists only where the husband is possessed of such estate at the *time of his* death." *Glenn, et al. vs. Clark*, 53 *Md.*, 6ᐤ4.

In the case at bar, the appellant, Margaret, cannot claim dower so as to defeat the appellee's claim; her husband being alive, this Court will enforce the contract, it being a lien upon the land within the letter and meaning of the Code, executed at a time when her husband held but an equitable title thereto. *Bowie vs. Berry*, 1 *Md. Ch. Dec.*, 452, 454.

But suppose we are wrong in this, Chancellor BLAND decreed in a case, where the husband had but an *equitable* title, and agreed to convey the same and afterwards died, that his widow should be paid her dower out of the purchase money. *Estep vs. Watkins*, 1 *Bland*, 486.

Should, however, the appellant, Margaret, have a claim against the property, the equities of the case can be worked out by allowing her such portion of the $10,000 decreed to be paid as will satisfy her *inchoate* right of dower.

The proposition of appellants that George shall receive the $10,000 for *his interest,* alone, in the property, subject to his wife's potential dower, notwithstanding his covenant, that he will, upon payment of that sum, "execute and deliver a good and sufficient deed in fee" of the property, to say nothing of his covenant of special warranty contained in the lease, is simply preposterous. *Davis vs. Parker,* 14 *Allen,* 94; *Bostwick vs. Beach,* 103 *N. Y.,* 414; *Beach's Modern Equity,* 628, *and note; Pomeroy on Specific Perf. of Contract,* 528.

In support of the doctrine of making an abatement of the purchase money to compensate the wife for her *inchoate* right of dower, the following additional authorities are relied on: *Sanborn vs. Nockin,* 20 *Minn.,* 178, 186–7; *Wingate vs. Hamilton,* 7 *Ind.,* 73, 76; *Hazelrig vs. Hutson,* 18 *Ind.,* 481; *Martin vs. Merritt,* 57 *Ind.,* 34; *Presser vs. Hildenbrand,* 23 *Iowa,* 491–2; *Park vs. Johnson,* 4 *Allen,* 267; *Wright vs. Young,* 6 *Wis.,* 127, 131–2.

Should the refusal of the appellee, Margaret, to unite in the deed, by any possibility, prevent the specific performance of the contract, then under our prayer for general relief, this Court is empowered to decree damages against the appellant, George, for breach of contract, the amount of which would be at least $5,000—the value of the property over and above the original purchase money. *Pomeroy on Specific Perform.,* secs. 477–478; *Rider, et al. vs. Gray,* 10 *Md.,* 282, 300; *Powell vs. Young,* 45 *Md.,* 494, 496–7; *Delaware State F. & M. Ins. Co. vs. Gillett,* 54 *Md.,* 221; *Busey vs. McCurley,* 61 *Md.,* 443; *Hartsock vs. Mort,* 76 *Md.,* 281.

McRae *vs.* McRae.

ROBINSON, C. J., delivered the opinion of the Court.

The property out of which this controversy has arisen, being a storehouse and dwelling, was sold at public auction on the 13th March, 1888, by John M. Littig and Jane McRae, trustees, under a decree of the Circuit Court of Baltimore City, and George P. McRae was returned as purchaser, and on the 18th April following the sale was finally ratified. On the 20th April, two days after the ratification of the sale, the purchaser leased the property to his brother, Charles McRae, for a term of five years at a yearly rent of $960, payable in monthly instalments, the lessor agreeing to pay all taxes, including water rent and expenses of repair; and upon default in the payment of the rent, the lessor was to re-enter, and the lease thereby to be null and void. The lessor further agreed to sell and convey the property to Charles, the lessee, in fee, upon the payment by him, his heirs or personal representatives, of the sum of ten thousand dollars and all arrearages of rent at any time during the continuance of the lease. Under this Charles entered into possession of the premises, and remained in possession until his death in January, 1892. After his death, and within the time designated in the lease, his widow, the complainant, as executrix and devisee under his will, through Mr. Lanahan, her attorney, tendered to George P. McRae, the lessor, ten thousand dollars and all arrearages of rent, and also a deed conveying the property in fee to the complainant. This tender George the vendor refused to accept, and refused also to execute the deed. Thereupon a bill was filed by the complainant, executrix and devisee, against the vendor to enforce the specific performance of the contract of sale. In his answer, George, the vendor, says his wife not being a party to the contract of sale, refuses to join in a deed conveying the property in fee to the complainant, and that all the complainant has a right to

demand of him under the contract of sale is a convey-
ance of the property by him upon the payment of the
sum of ten thousand dollars and all arrears of rent
subject to the dower therein of his wife.   Subsequently
an amended bill was filed by the complainant against
George P. McRae, and Margaret his wife, alleging that
since the filing of the original bill she had discovered
that George was not in fact the owner of the property,
but that it was purchased by Charles, her husband, at
the trustees' sale, and was paid for by him with the
money loaned to him by his brother George, and that
the title was conveyed by the trustees merely as a
security for the payment of the loan.   Now, if these
averments be true, if the property was purchased by
Charles, and George loaned to him the ten thousand dollars
to enable him to pay the purchase money, and took the
legal title on himself as a security for the payment of
the loan, then upon such a state of facts a trust would
arise by operation of law in favor of Charles, and the
case would fall directly within the decision of *Dryden
vs. Hanway*, 31 *Md.*, 254.   In other words, George would
hold the property in trust for Charles, and the deed con-
veying the legal title to George would be treated in
equity merely as a security for the payment of the loan.
The burden, however, is upon the complainant to estab-
lish the facts upon which the trust rests by clear and
satisfactory proof.   Now, what is the proof?   In the first
place, it is said that the property was struck off to George
at the trustees' sale.   And so the auctioneer testifies,
but at the same time he says that $6,500 was the high-
est *bona fide* bid made upon the property, and that he
himself, by the direction of Mr. Merryman and of George
and Charles McRae, both of whom were directly inte-
rested in the sale, the property being part of their
father's estate, bid the property up to $10,000, and
then struck it off to Charles.   Mr. Merryman, who was

counsel for all the parties in interest, testifies that the property was struck off to Charles, and that George was substituted as purchaser, because of Charles' unwillingness or inability to take the purchase money out of his business, and in pursuance of a verbal agreement between George and Charles that the latter should have the property whenever he paid to George the ten thousand dollars, the same being the purchase money, and that this verbal agreement was embodied in the lease which was drawn by the witness. And being pressed by the question, he says the lease was understood to be merely as a security for the payment of $10,000. Now whatever may be the recollection of the witness testifying as to matters which occurred five years ago, one thing is certain, that from the beginning to the end of this lease there is not a line or word from which it can be inferred that it was executed as a security for the payment of $10,000 loaned by George to Charles, nor as security for the payment of any sum whatever. On the contrary, it is a carefully prepared instrument, by which George, as purchaser and owner, leases the property to Charles for a term of years upon the payment of a stipulated rent. And besides the covenants ordinarily contained in leases, there is an agreement on the part of George to sell and convey the property in fee to Charles upon the payment of a designated sum, within a designated time.

Then we have the testimony of Mr. Littig, one of the trustees, and what does he prove? Quoting his exact language, he says: "There was a conversation between George and Charles McRae and the attorney Mr. Merryman and myself, and there was a verbal understanding; Mr. George McRae had money as I understood out at a low rate of interest, and he was to be substituted for Mr. Charles McRae, with a verbal understanding that Mr. Charles McRae could buy the property back; it was

a loan, as I understood it. I understood a lease and agreement was made afterwards covering that verbal understanding."

This is substantially the proof relied on to show that Charles was the purchaser, and that the purchase money was loaned to him by George, and that the legal title was conveyed to the latter to secure the payment of the loan. And although these witnesses speak of "*understandings,*" and how they understood the verbal agreement between George and Charles, yet they all agree that this verbal understanding was reduced to writing, and embodied in the lease prepared by Merryman, one of the witnesses, himself. Now, if the case rested here, it could hardly be said, in the face of the clear and explicit terms of the lease, containing, as all the witnesses say, the agreement between George and Charles, and in the face of the trustees' deed conveying the legal title to George, that the complainant has offered such proof as the law requires to establish a resulting trust. But the case does not rest here. We have the repeated and unqualified declarations and admissions by Charles himself, made directly after the sale, to a number of persons, among whom were some of his intimate friends, that the property was bought by George, assigning at the same time the reasons why he did not himself buy it. Directly after the sale the witness Black went with George and Charles to the house of the latter, and as soon as they entered the dining-room, Mrs. Charles McRae said, "Charlie, who bought the store?" and he replied, "my brother George," and then addressing George in an excited manner, she said, "What made you buy the store over Charley's head?"

Then we have the testimony of Mr. Capron, who called at the store to inquire about the sale of the property, and he says that Charles told him that George had

bought it, and assigned as a reason for not buying it himself, that he could do better with the money in his business. The same thing he said to Mr. Banks, and three days before the sale he told Mr. Schruber, his bookkeeper, that George was to buy the property at $10,000, and that he, Charles, could do better with the money in his business.

So taking the whole testimony together, instead of proving that the property was bought by Charles, and that the purchase money was loaned to him by George, it shows beyond all question, it seems to us, that George was in fact the purchaser, that he paid the entire purchase money, and that in pursuance of an understanding between them, George leased the property to Charles for a term of years with an option on the part of the latter to buy it at a named price and within a given time. And this being so there is no ground on which a resulting trust can be maintained. We come then to the original bill. And here we find a contract on the part of George to sell and convey the property in fee to Charles, his heirs and personal representatives, upon the payment by him of ten thousand dollars, and all arrears of rent at any time within five years from the date of the contract. The purchase money and arrears of rent have been tendered to George and he refuses to convey the property in fee, because his wife declines to join in the conveyance. His wife was not a party to the contract, and if she has an *inchoate* right of dower in the property this Court has no power to compel her to unite with her husband in the conveyance. The contention however is, that the husband having but an equitable estate in the property at the time he entered into the contract of sale, the contract itself being founded on a good consideration necessarily defeats the dower right of his wife. It is well settled that the wife is only entitled to dower in the equitable estates of which the husband

dies possessed. If he sells and conveys the equitable estate, the dower right is gone. The question then is, whether a contract on the part of the husband to sell his equitable estate will, in equity, bar the claim of his wife to dower in the equitable estate? We say in equity, for executory contracts for the sale of land, and the rights of parties thereunder are governed by different principles in equity than in law. Such a contract at law in no manner affects the title to the property, nor does it create any interest in, or lien, or charge upon the land itself. The vendor to all intents remains the owner of the land; he may convey or devise it, and upon his death it descends to his heirs. The vendee acquires no interest or property right whatever in the land; his right is a mere right of action to recover compensation or damages for a breach of the contract by the vendor. But not so in equity. In some respects and for some purposes, the contract is executory in equity as well as at law. But upon the principle that equity regards and treats as done what ought to be done, a contract for the sale of land, so far as the interest or estate in the land of the two parties is concerned, will be regarded in a Court of equity as executed and as operating to transfer the estate from the vendor and to vest it in the vendee. By the terms of the contract the land ought to be conveyed to the vendee, and the purchase money ought to be paid to the vendor upon the principle that that shall be considered as done which the parties have contracted to do. And hence the vendor will be treated as a trustee for the purchaser of the estate sold, and the vendee as a trustee for the vendor of the purchase money to be paid. The vendee is in fact considered as the owner of the land, and although the vendor may still retain the title, he holds it as a trustee for the vendee, to whom all the beneficial interest has passed, with a lien on the estate as security for any unpaid portion of the purchase money. And as the vendor holds the title in

trust for the vendee, the equitable estate of the vendee will be good against the vendor's heirs and devisees, and others claiming under her with notice. And if the vendor dies, and the vendee completes the contract by the payment of the purchase money, the money paid becomes assets in the hands of his executors or administrators, to be by them administered with the rest of his personal estate. Thus, for instance, in *Farrar vs. Earl of Winterton*, 5 *Beav.*, 1, where the testatrix made a will devising real estate, and after making the will contracted to sell the land, and the contract was not fully carried into effect by the payment of the purchase money and the conveyance of the property, Lord LANGDALE said: "In equity she had *alienated the land*, and instead of her *beneficial* interest in the land, she had acquired a title to the purchase money. What was hers in right and equity was not the land but the money, of which she alone had the right to dispose, and though she had a lien upon the land and might have refused to convey, until the money was paid, yet that lien was a mere security, in and to which she had no right or interest, except for the purpose of enabling her to obtain the payment of the money.

If it be conceded then that a sale and conveyance by George P. McRae of his equitable estate would have defeated the dower right of his wife, for the reason that he had disposed of such equitable estate, it must necessarily follow, that a contract entered into by him founded on a valuable consideration to sell the same must, upon the well settled principles of equity to which we have referred, have the same effect. It must have the same effect for the reason that, by the contract of sale, his interest in the equitable estate has been transferred to the vendee. In other words, the contract of sale is regarded in equity as executed, and as operating to transfer the estate from the vendor and to vest it in the vendee.

McRae *vs.* McRae.

We have not overlooked the case of *Bowie vs. Berry,* 3 *Md. Ch.*, 262, and some of the views expressed by the Chancellor may be considered as being in conflict with what we have said. No appeal, however, was taken in that case, and although the decision of that able and learned Chancellor upon any question is entitled to great weight, yet the conclusion reached by him is, it seems to us, in conflict with the well settled rules and principles by which contracts for the sale of land are treated and governed in a Court of equity. It follows from what we have said, that the complainant is entitled to a conveyance in fee for the property which the defendant, George P. McRae, agreed to sell to her husband, Charles McRae, upon the payment by her of the ten thousand dollars purchase money, and all arrears of rent if any may be due. And as the legal title was conveyed to him by the trustees after the execution of the contract of sale, he will be considered as holding such title as trustee for the vendee. In other words, having sold his equitable estate, he acquired no *beneficial* interest by the conveyance to him of the legal title. At the same time holding the dry legal title, it is proper that his wife should join in the conveyance to the complainant, and if they should refuse to execute a deed conveying the property in fee to the complainant, a trustee will be appointed to convey the same. It follows from what we have said that the decree below must be reversed and the cause remanded, in order that a decree may be passed in conformity with the views we have expressed.

*Decree reversed, and*
*cause remanded.*