# ARTHUR G. CLAYTON

## *vs.*

## WINSTON T. SMITH AND ELLEN SMITH.

### *Stocks: purchase on margin; title; equity.*

When a stock broker purchases stock for a customer, upon his order—and, by means of a loan effected from a banker, upon the customer's collateral, although the legal title to the stock may be taken in the broker's name—yet in equity, the broker is not regarded as the sole owner; and upon payment of the amount due upon the stock by the customer, the latter has the right to have the stock transferred to his own name, subject to whatever may be the equities of the party for whom such loan was made.                                    p. 571

In such a case equity has jurisdiction to compel an accounting by the banker, to ascertain the relation between the parties and state of the account.                              p. 572

*Decided December 13th, 1917.*

*Appeal from the Circuit Court No. 2 of Baltimore City.* (DUFFY, J.)

The facts are stated in the opinion of the Court.

The cause was submitted on briefs to Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*Charles P. Coady* and *A. Herman Siskind,* for the appellant.

*E. P. Keech, Jr., Robert R. Carman* and *Keech, Wright & Lord,* for the appellees.

Burke, J., delivered the opinion of the Court.

We are called upon on this appeal to determine the propriety of an order of the Circuit Court No. 2 of Baltimore City, passed on the 14th day of May, 1917, overruling a demurrer of the appellee, one of the defendants, to the amended bill. The grounds upon which the bill was alleged to be bad, as stated by the demurrer, are: *first,* that the complainant has not stated such a cause of action as entitles him to relief, as prayed, in a Court of Equity; *secondly,* that this Court has no jurisdiction to try the aforesaid action. The original bill to which a brief reference will presently be made was filed on January 16, 1917. The amended bill was filed by leave of Court on February 9, 1917.

The admitted facts stated as briefly as may be (for the bill is quite lengthy, containing 16 paragraphs, and sets forth fully all the facts in respect to the transaction which gave rise to this suit) are as follows: The plaintiffs are Winston T. Smith and his mother, Mrs. Ellen Smith,—she having been made a party plaintiff to the cause by an order of the Court passed on the 22nd day of March, 1917. She adopted the averments and allegations and prayers of the original bill and amended bill and agreed to be bound by the orders and proceedings theretofore entered. The defendants are Arthur G. Clayton, the appellant, and the Citizens National Bank of Baltimore, Maryland, which has its principal office and place of business in the City of Baltimore. Winston T. Smith, Ellen Smith and Arthur G. Clayton are residents of Marion

County, in the State of West Virginia. Prior to the 9th day of September, 1916, Winston T. Smith had acquired information which induced him to believe that the stock of the Ohio Oil Company was a good investment. He disclosed this information to Clayton and suggested to Clayton that financial arrangements be made to purchase certain shares of this stock. Thereupon an agreement was entered into between Smith and Clayton to this effect, viz: Smith was to obtain confirmation of the information he had previously acquired and which he had disclosed to Clayton with respect to said stock, and, if such inquiry should confirm his previous information as to its being a good investment, he should inform Clayton of that fact, and that thereupon Clayton would purchase certain shares of said stock, of which he agreed to carry thirty shares thereof for the account of Smith, and such additional shares as he might purchase for his own account. In pursuance of this agreement Smith did institute inquiry with a view to obtain confirmation of his previously acquired information as to the stock and this inquiry resulted in the confirmation of the information which he had communicated to Clayton that the stock of the Ohio Oil Company was a desirable investment. On or about the 9th day of September, 1916, he communicated this fact to Clayton. Thereupon and in pursuance of the agreement stated Clayton purchased eighty shares of the stock of the Ohio Oil Company of which he had agreed, as above stated, to carry thirty shares for the account of Smith. On the 11th day of September, 1916, Clayton informed Smith of this purchase and on that day Smith and Clayton executed the following memorandum or writing:

> "A. G. Clayton has borrowed $7,600 from the Citizens' National Bank of Baltimore, Md. This was for the purchase of thirty (30) shares of Ohio Oil Company stock for W. T. Smith and Ellen Smith. A. G. Clayton put up as collateral on note the thirty (30) shares of Ohio Oil Company stock and five (5) shares of Standard Oil of New Jersey stock, this five (5)

shares of New Jersey being A. G. C.'s individual
stock. The thirty shares of Oil Company stock will
be transferred in A. G. C.'s name. In order to secure
A. G. C. for having done this, W. T. S. agrees to give
A. G. C. first mortgage on vacant lot situated on the
corner of Locust street and Furbee avenue, said lot
being in the name of his mother, Mrs. Ellen Smith,
but as W. T. S. and his mother are both interested in
this purchase of Ohio Oil it is for this reason said lot
is being given A. G. C. as security."

This memorandum was filed with the bill and as a part
thereof. It will be observed that this memorandum declared
that thirty shares of this stock was purchased for W. T.
Smith and Ellen Smith, the appellees, and it further shows
that Clayton had borrowed from the Citizens National Bank
the sum of $7,600—that being the purchase price of the
thirty shares—upon a note, and had deposited with the bank
as collateral security for the loan said thirty shares, and also
five shares of stock of the Standard Oil Company of New
Jersey—this latter named stock is stated to be the *individual*
property of Clayton. It is further stated that the thirty
shares of the Ohio Oil Company would be transferred in
Clayton's name. The note given to the bank for $7,600, rep-
resented the cost price of the thirty shares together with the
interest upon the cost thereof from September 9, 1916, to
January 9, 1917.

In order to carry the entire purchase—eighty shares—
Clayton pledged the same for loans which he obtained at the
Citizens National Bank. The amount or amounts of these
loans are unknown to the plaintiffs, but all of these loans are
represented by promissory notes, with authority to the bank
to hold any collateral deposited as security for any one of said
notes for any other indebtedness of the maker to the bank.
Subsequent to the 11th day of September, 1916, and prior to
January 9, 1917, Clayton obtained from the bank ten shares
of the stock of the Ohio Oil Company. On or before Janu-

ary 9, 1917, Clayton took up all promissory notes executed by him to the bank and substituted in the place thereof one note for $60,800, and pledged as collateral security therefor the remaining seventy shares of oil stock and various and sundry other stocks and collaterals. On the 11th day of September, 1916, the date of the execution of the memorandum quoted above, Clayton informed Smith that the loan he had negotiated at the Citizens National Bank, to wit, $7,600, for carrying the thirty shares of the oil company's stock for Smith, would mature on January 9, 1917, and shortly after September 11, 1916, and again shortly before January 9, 1917, Smith informed Clayton that he would be ready on January 9, 1917, to pay said sum of $7,600 and requested Clayton to be ready to deliver said thirty shares to him on that date. Smith was able, ready and willing on that date and ever since then to pay Clayton said sum of $7,600, thereby making full performance of his obligations to repay to him the cost price of the oil stock.

On or about January 8, 1917, Smith met Clayton in the City of Washington, and then and there requested Clayton to make arrangements for the delivery to him on January 9, 1917, of the thirty shares of stock and exhibited to Clayton a certified check for $7,600 as evidence of his ability to pay for the stock. Clayton refused to make delivery of the shares of stock on the following day and stated that the *loans* for which the said shares were pledged had been *renewed.* On January 16, 1917, Smith tendered to the Citizens National Bank on its behalf as lender and pledgee and on behalf of Clayton the sum of $7,600 in payment of the amount due by him to Clayton for the purchase of said thirty shares. The tender was refused by the bank and it also refused to surrender or deliver the stock. Since the purchase the Ohio Oil Company has declared a dividend on said thirty shares aggregating $150, which amount Clayton withholds and refuses to pay over. Smith is now ready to pay Clayton or the Citizens National Bank, according to their respective rights in the

premises, the sum of $7,600 in accordance with the agreement of September 11, 1916.

The fourteenth, fifteenth and sixteenth paragraphs of the amended bill are as follows:

"14. Your Orator further shows that the market price of shares of stock of the Ohio Oil Company has risen greatly since the purchase of said thirty shares of stock was made on the 9th day of September, 1916, and that it is impossible for him to purchase thirty shares of said stock for the price of seventy-six hundred dollars ($7,600), and that the action of the defendant Clayton in using and depositing said thirty shares of stock as collateral for any other loan than a loan of seventy-six hundred dollars ($7,600), as mentioned and referred to in the paper writing of September 11th, 1916, hereinbefore referred to, and the failure of said defendant Clayton to pay over to your Orator the amount of the dividend declared and paid upon said shares of stock as hereinbefore set forth, constitute gross violations of the rights of your Orator in the premises, and lead him to fear and believe that said defendant Clayton may attempt to sell, pledge or otherwise dispose of the said thirty shares of said stock before this controversy can be heard and determined.

"15. Your Orator is advised and therefore avers, that he is entitled to have and receive from said defendant Clayton and said defendant, the Citizens' National Bank, thirty shares of the stock of the Ohio Oil Company out of the seventy shares of the stock of said company now held by said bank as collateral security for loans made by it to said defendant Clayton upon the payment by your Orator of said sum of seventy-six hundred dollars ($7,600), provided only that the other collateral deposited and pledged by said defendant Clayton with said Citizens' National Bank as collateral for such loan or loans shall be sufficient, when sold and realized upon, together with said sum of seventy-six hundred dollars ($7,600), to pay the

amount of the loan or loans made by said Citizens'
National Bank upon the security thereof; and he is
also advised, and therefore avers, that he is entitled
to have a discovery and accounting between himself
and said Clayton and said Citizens' National Bank for
the purpose of ascertaining the amount of the loan
or loans made to said Clayton by said bank, and the
collaterals deposited as security for the same, to the
end that the said collaterals, other than thirty shares
of the capital stock of the Ohio Oil Company, out of
the seventy shares of said stock so held by said bank,
may be first applied to the 'payment or liquidation
of said loan or loans, together with said sum of sev-
enty-six hundred dollars ($7,600), which your Orator
is now, as aforesaid, and has been since the 8th day
of January, 1917, able, willing and ready to pay unto
said Clayton and said Citizens' National Bank, in re-
demption of said thirty shares of the capital stock of
said Ohio Oil Company, so purchased by said defend-
ant Clayton, and held by him for account of your
Orator, and that your Orator may have and receive
said thirty shares of the capital stock of said Ohio
Oil Company from said Clayton and said bank, upon
the payment of said sum of seventy-six hundred dol-
lars ($7,600).

"16.   Your Orator further shows that he has at all
times since the 11th day of September, 1916, been
ready, willing and able to comply in full and in all
respects with any and all obligations undertaken by
him to be performed, as his part of the agreement had
and entered into with said defendant Clayton, in rela-
tion to the purchase of said thirty shares of the stock
of the Ohio Oil Company by said defendant Clayton
for his account."

The relief prayed for was:

"(1) That upon the payment of your Orator unto the
said Arthur G. Clayton and the Citizens' National
Bank of Baltimore, Maryland, or either of them, ac-

cordingly as their respective rights in the premises
may appear, of the sum of seventy-six hundred dol-
lars ($7,600), and thirty shares of the capital stock
of the Ohio Oil Company, of the par value of twenty-
five dollars ($25) each, may be decreed to be redeemed,
and that certificates for the same may be decreed and
directed to be duly transferred and delivered unto your
Orator;

"(2) That your Orator may have a discovery and
accounting as between himself and said Arthur G.
Clayton and said Citizens' National Bank of Balti-
more, and both of them, accordingly as their respective
rights in the premises may appear, so that the collat-
eral deposited with said Citizens' National Bank of
Baltimore by said Clayton, as security for any loan or
loans made by him with said bank, other than said
thirty shares of stock of .the Ohio Oil Company, may
be first applied, together with said sum of seventy-six
hundred dollars ($7,600), to the payment and liquida-
tion of said loan or loans, before recourse is had to
said thirty shares of stock of the Ohio Oil Company,
or any thereof;

"(3) That your Orator may have an injunction
enjoining and restraining said Arthur G. Clayton from
selling, pledging or otherwise disposing of or dealing
in any shares of the capital stock of the Ohio Oil Com-
pany, deposited by him as collateral security for any·
loan or loans made to him by said Citizens' National
Bank of Baltimore, or any other shares of stock or
collateral deposited by him as collateral for any such
loan or loans, and enjoining and restraining said Citi-
zens' National Bank of Baltimore from delivering or
transferring unto said Arthur G. Clayton, or any other
person, whomsoever, or otherwise dealing with or dis-
posing of, thirty shares of the capital stock of the Ohio
Oil Company, held by it as collateral for any loan or
loans made by it to said Arthur G. Clayton, or any
other securities held by said bank as collateral secu-
rity for any such loan or loans, except subject to the

order of this Honorable Court pending the final deter-
mination of this cause."

Upon the filing of the amended bill an injunction was issued
as prayed. The Citizens National Bank moved to dissolve
the injunction issued on February 9, 1917, upon the filing of
the amended bill and after hearing, the Court by an order
dated March 3, 1917, dissolved the injunction "as to all of
the shares of stock and other collateral deposited by the de-
fendant, Arthur G. Clayton, with the Citizens National Bank
of Baltimore as security for a promissory note for sixty thou-
sand eight hundred dollars ($60,800), dated January 3rd,
1917, and payable two months after date, except, however,
thirty of the shares of the capital stock of the Ohio Oil Com-
pany deposited as security for said note; and that with re-
spect to said thirty of the shares of the capital stock of the
Ohio Oil Company deposited as collateral security for said
promissory note the said injunction heretofore issued by this
Court on the 9th day of February, 1917, shall be and it is
hereby continued in full force and effect, except that and pro-
vided that in case the said promissory note of said Arthur
G. Clayton for sixty thousand eight hundred dollars ($60,-
800), dated January 3rd, 1917, and payable two months
after date shall not be paid or taken up at maturity and the
said Citizens National Bank of Baltimore shall as a conse-
quence thereof proceed to sell the shares of stock and colla-
teral deposited as security for the same, other than thirty of
the shares of the capital stock of the Ohio Oil Company so
deposited, and if the proceeds of the sale of said collateral
shall not be sufficient to pay and discharge the amount of said
note and interest thereon, if any, then the said Citizens
National Bank of Baltimore shall have the right to make sale
of said thirty of the shares of the capital stock of the Ohio
Oil Company as to which the said injunction is continued
as aforesaid."

In view of that order the questions presented for decision
are: *first,* are the plaintiffs upon the facts stated in the

amended bill entitled to redeem said thirty shares in the event that said note of sixty thousand eight hundred dollars shall not be paid and in the further event that it shall not be found necessary to sell said shares for that purpose under the terms specified in the order mentioned above?; and *secondly,* as ancillary to this relief are the plaintiffs entitled to the discovery and accounting prayed for in the amended bill?

The facts conclusively show that Clayton was not the real purchaser of the stock. It was not bought for his benefit and it was not intended that he should be its beneficial owner. It was intended by the parties, as declared by the written memorandum to be the property of Winston T. Smith and Ellen Smith, the plaintiffs. The purchase price, according to previous arrangement, was borrowed and the stock was deposited as collateral for the loan. The plaintiffs were obligated to repay to Clayton the amount of that loan. The value of this stock has greatly increased and the appropriation of it and of the dividends declared on it by Clayton to his own use would be inequitable and against good conscience. The powers of a Court of Equity are ample to prevent that wrong and afford that particular redress which the equity of the case required. Upon the facts disclosed by the record the plaintiffs have a primary equitable right to the stock, subject, of course, to the rights of the Citizens National Bank, and upon the payment of the purchase price it is the duty of Clayton and the bank, subject, however, to the conditions prescribed in the order of the lower Court to deliver its possession to them. While the legal title to the stock is vested in Clayton, equity, under the circumstances, will treat him as a trustee holding it for its real and beneficial owners,—the plaintiffs in this case. The facts alleged bring the case fully within the principles announced in *Dryden* v. *Hanway,* 31 Md. 254; *McRae* v. *McRae,* 78 Md. 270; *Dixon* v. *Dixon,* 123 Md. 44.

Three of the parties to the cause are non-residents of this State but the property which is the subject of the controversy is located in this State in the possession of the Citizens

National Bank and the Court has full power to deal with it in this proceeding. It is provided by section 124, Article 16 of the Code that: "If in any suit in chancery, by bill or petition, respecting in any manner the sale, partition, conveyance or transfer of any real or personal property lying or being in this State or to foreclose any mortgage thereon, or to enforce any contract or lien relating to the same or concerning any use, trust or other interest therein, any or all of the defendants are non-residents, the Court in which such suit is pending may order notice to be given to such non-residents of the substance and object of such bill or petition and warning them to appear by a day therein stated."

The Citizens National Bank holds the stock as collateral security for the loans made by it to Clayton without notice of the equitable ownership of the plaintiffs and it is necessary upon the allegations of the bill that an accounting and discovery as prayed should be had as an incident to the other equitable relief.

The interest of the plaintiffs in these thirty shares of stock are created by equity. That interest can not be fully and adequately protected in a Court of law. The plaintiffs can secure the full and adequate redress to which they are entitled only by the application to the case of the restorative remedy of a Court of Equity. It follows from these views that the order appealed from must be affirmed and the case remanded for further proceedings.

*Order affirmed, with costs and cause remanded.*